UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KEIONA L. HARRISON, | ) | |
| *also known as* Keiona Harrison, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-00419-SLC |
| | ) | |
| CITY OF FORT WAYNE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court[1] on the motions *in limine* filed by Plaintiff and Counter-Defendant Keiona Harrison ("Harrison") (ECF 120), and Defendants and Counter-Claimaints Fort Wayne Police Officers Robert Hollo, George Nicklow, Christopher Hawthorne, and Julie McConnell (the "Defendant Officers") and Defendant City of Fort Wayne (collectively, "Defendants") (ECF 123, 131).  For the following reasons, the parties' initial motions *in limine* (ECF 120, 123) will each be GRANTED IN PART and DENIED IN PART.  Defendants' supplemental motion *in limine* (ECF 131) will be GRANTED.

## I.  FACTUAL AND PROCEDURAL HISTORY

Harrison is suing Defendants under 28 U.S.C. § 1983 for use of excessive force, unlawful search of her purse and person, and failure to intervene in violation of the Fourth and Fourteenth Amendments, as well as state-law battery claims.  The Defendant Officers, in turn, are bringing state law defamation counter-claims against Harrison.  Harrison's claims arise out of a series of events occurring on May 13, 2017, at approximately 3:15pm.  Defendants Hollo, Nicklow, and

---

[1]     Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (ECF 8).

Hawthorne were conducting a traffic stop in the parking lot of a CVS Pharmacy, located at 5802 S. Anthony Boulevard, Fort Wayne Indiana.  As Defendant Hollo was transporting the passenger of the stopped vehicle, Tyronte Wilms, to a police squad car, Wilms yelled something to Harrison, her distant cousin who had arrived in the CVS parking lot in a separate vehicle. Harrison contends that Hollo then approached her and asked for her name, before using excessive force to pull her to the front of a squad car, handcuffing her, and sitting her in the back of the squad car when she questioned why he needed her name.  She asserts that Defendant Hollo then unlawfully searched her purse to retrieve her driver's license.  Harrison further contends that after Defendant McConnell arrived on the scene, Defendant McConnell unlawfully performed a quasi-cavity search, using excessive force to do so.  Throughout this course of events, Harrison contends that the other Defendant Officers failed to intervene to prevent the alleged constitutional violations.

Defendants dispute Harrison's version of events, asserting that any force used against her was justified.  They further contend that Defendant McConnell performed a proper protective pat-down, and that, in any event, Harrison consented to both the pat-down and for Defendant Hollo to retrieve her identification from her purse.  The Defendant Officers also contend that Harrison defamed them and invaded their privacy by false-light publicity by falsely contending that they violated her constitutional rights in statements made to her work supervisors, Michael Manuel and Eric Zimmerman, and a former Fort Wayne Police Officer, Miguel Rivera.  Harrison contends that any statements she made are true and that her statements to Manuel and Zimmerman are privileged.

## II.  NATURE OF AN ORDER *IN LIMINE*

"A motion in limine is a request for guidance by the court regarding an evidentiary question."  *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (citation and emphasis omtted) (Coffey, J., concurring in part and dissenting in part).  "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials."  *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term '*in limine*' suggests, a court's decision on such evidence is preliminary in nature and subject to change."  *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion *in limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial").  In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer."  *Connelly*, 874 F.2d at 416 (alteration in original) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion *in limine* is not a final ruling on the admissibility of the evidence that is the subject of the motion; rather, an order on a motion *in limine* is essentially an advisory opinion, "merely speculative in effect."  *Wilson*, 182 F.3d at 570-71 (emphasis omitted) (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## III.  HARRISON'S MOTION *IN LIMINE*

### A.  Unopposed Portions of Harrison' Motion in limine (Nos. 2-5)

Defendants do not object to Harrison's efforts to preclude references or allusions to attorney fees; settlement negotiations; tax considerations; or "send a message" arguments in

opening or closing statements.  As such, Harrison's motion (ECF 120) is GRANTED as to these matters.

### B. Narrative Reports of the Defendant Officers (No. 1)

Harrison first seeks to bar any narrative reports by the Defendant Officers and other officers who may testify, claiming they are biased, prejudicial, and constitute inadmissible hearsay.  (ECF 120 at 1-2).  In response, Defendants contend that the reports are admissible under Federal Rules of Evidence 803(8) (public records and reports) and 803(5) (recorded recollection).  (ECF 126 at 1).

At this juncture, Harrison's Motion *in limine* is GRANTED with respect to this evidence. Presumably, any narrative reports may ultimately be admissible, at least in part, under Federal Rule of Evidence 803(8), although certain hearsay statements within the reports may need to be redacted.  Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained. Counsel are directed to confer in an effort to reach a stipulation concerning suitable redactions. Moreover, until Defendants have laid a proper foundation, they may not use the documents to refresh any witness's recollection or read the document into evidence under Rule 803(5).

### C. Harrison's So Called "Criminal Conduct" (No. 6)

Harrison also seeks to prohibit Defendants from introducing evidence that she had participated in criminal conduct, contending that such evidence would constitute impermissible hearsay.  (ECF 120 at 2-3).  In doing so, Harrison points out that she was never charged with a crime, and requests if such evidence is permitted, the Court issue a limiting instruction.  (*Id.*). Defendants, in response, contend that the Defendant Officers should be permitted to testify

4

regarding what they observed Harrison do and what Harrison said during the investigatory stop on May 13, 2017.  (ECF 126).

At this point, Harrison's Motion is GRANTED IN PART and DENIED IN PART.  As mentioned, two of the issues in this case are whether the Defendant Officers used excessive force against Harrison and whether the Defendant Officers could have properly conducted a pat-down search.  In an excessive force case, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Additionally, "[t]o justify a warrantless pat-down search without probable cause, the officer must also be able to point to specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or to others."  *United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999).  Accordingly, the jury is entitled to hear a full account of the events leading up to and surrounding any use of force against Harrison or search.  *See Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008); *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002).  In other words, the Defendant Officers will be permitted to testify as to why they detained Harrison, as that would be relevant to the reasonableness of the force used and the need to conduct a pat-down search.  Fed. R. Evid. 401.

However, as Harrison does not specify when this potential criminal conduct occurred, it is possible she is referring to events occurring before or after May 13, 2017.  On the record before the Court, there is no suggestion that any of the Defendant Officers intend to introduce evidence of Harrison's potentially criminal acts, if any, before or after May 13, 2017.  Even if they did, though, it is hard to see how such conduct would be at all relevant to either the excessive force or unlawful search, as there is no evidence that any of the Defendant Officers

were aware of Harrison's criminal history, if any, at the time of the investigatory stop.  *See*

*Sherrod v. Berry*, 856 F.2d 802, 804-05 (7th Cir. 1988) (en banc) ("When a jury measures the

objective reasonableness of an officer's action, it must stand in *his* shoes and judge the

reasonableness of his actions based upon the information he possessed and the judgment he

exercised in responding to that situation.").  Accordingly, Harrison's motion is GRANTED in

this regard.

## IV.  DEFENDANTS' MOTION *IN LIMINE*

### A.  *Unopposed Portions of Defendants' Motion in Limine (Nos. 2-5, 13)*

Harrison does not object to Defendants' efforts to preclude references or allusions to

settlement negotiations; references regarding whether the City of Fort Wayne will be paying any

judgment against the Defendant Officers; any written statements and Harrison's affidavit

concerning the events of May 13, 2017; and Facebook posts related to this incident.  As such,

Defendants' motion (ECF 123) is GRANTED as to these matters.

### B.  *Citizen Complaints, Other "Wrongs," Other Civil Actions, or Discipline Against the Defendant Officers or Any Other Police Officer That Testifies at Trial and Information Contained in the Officers' Personnel Files with the Fort Wayne Police Department (No. 1)*

Defendants seek to exclude evidence of other "wrongs," civil actions, citizen complaints,

and/or discipline taken against the Defendant Officers and other officers who may testify at trial,

as well as information contained within the Officers' personnel files.  (ECF 124 at 1).

Defendants raise a variety of arguments in support of their motion, including that the evidence is

not relevant under Federal Rule of Evidence 401, would be unduly prejudicial under Rule 403,

contains inadmissible hearsay pursuant to Rule 802, and consists of impermissible character

evidence under Rule 404.  (*Id.* at 1-5).  Harrison asserts that she does not object to the motion,

"except to the extent that it prohibits Plaintiff from offering evidence of any of the Defendants'

actions (which may be considered "wrongs") which caused that particular Defendant/counter-claimant emotional distress or harm to reputation."  (ECF 133 at 1).

As to Harrison's limited objection, the matter is discussed more fully *infra* in relation to Defendants' motion seeking to exclude published news articles and other civil cases.  In summary, the Court concludes that such evidence as discussed there, may be introduced for the limited purpose of refuting the Defendant Officers' claims that Harrison's statements proximately caused harm that the Defendant Officers seek to compensate through their counter-claims.  Accordingly, Defendants' motion *in limine* is DENIED in that regard.

However, to the extent that Harrison attempts to introduce such evidence outside of the limited exception detailed below, Defendants' motion is GRANTED.  In general, Federal Rule of Evidence 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  While evidence of such wrongs may be admissible for non-propensity purposes, *see Treecee v. Hochstetler*, 213 F.3d 360, 363-64 (7th Cir. 2000), Harrison does not advance those arguments here.  Further, Harrison does not advance any argument that such evidence falls into a hearsay exception or is offered for a non-hearsay purpose.  *See Jones v. Police Officer Omarlo Phillips*, No. 15-CV-51, 2017 WL 1292376, at *1 (E.D. Wis. Apr. 6, 2017)  ("Hearsay statements of unsubstantiated reports of misconduct are not sufficiently reliable to be presented to a jury.  Therefore, the defendants' motion in limine to exclude their personnel files is granted.").

### C.  Testimony That the Defendant Officers Used "Excessive Force" or "Unlawfully Searched" Plaintiff or Her Purse (No. 5).

Defendants also seek to bar Harrison from testifying that the Defendant Officers used "excessive force" or "unlawfully searched" her or her purse, on the grounds that such claims are

inadmissible legal conclusions under Federal Rule of Evidence 701(b).  (ECF 124 at 7-8).

Harrison does not object *per se*, but "insists upon testifying about the level of force used against

her and whether she granted permission for any of the officers to conduct a search of purse

and/or person."  (ECF 133 at 2).

Defendants raised similar arguments in the motion to strike they filed seeking to exclude

portions of Harrison's deposition and affidavits from consideration during the Court's summary

judgment ruling.  (ECF 83 at 1).  As the Court explained in its prior Opinion and Order as to that

motion:

> "The Seventh Circuit has held that 'lay testimony offering a legal conclusion is
> inadmissible because it is not helpful to the [factfinder] . . . .'"  *Larson v.
> Barrientes*, No. 1:09-cv-55, 2010 WL 2772325, at *3 (N.D. Ind. July 12, 2010)
> (quoting *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009)).  "This is
> because a lay witness's purpose is to inform the jury what is in the evidence, not
> to tell it what inferences to draw from that evidence."  *Id.* (citation omitted). . . .
> [A] witness may testify to the facts surrounding a police officer's use of force, but
> it is for the factfinder to determine whether the "[d]efendant used unreasonable
> force against [her]."  *See* Federal Civil Jury Instructions of the Seventh Circuit §
> 7.09 (2017).

(ECF 92 at 4).  In other words, although Harrison and any witness may testify about what she

observed, she cannot attach legal labels such as "excessive" or "unreasonable" to the Officers'

actions.  *See Larsen v. Barrientes*, No. 1:09-cv-55, 2010 WL 2772325, at *3 (N.D. Ind. July 12,

2010); *Norman v. City of Lorain*, No. 1:04-cv-913, 2006 WL 5249724, at *4 (N.D. Ohio Nov.

16, 2006).  Therefore, Defendants' motion *in limine* is GRANTED with respect to this evidence.

### D.  Harrison's Notes of Her Conversation with Stacey Jenkins (No. 6)

Defendants next assert that any notes Harrison made of her alleged conversation with

Stacey Jenkins should not be admissible as they contain hearsay, are not relevant, and are unduly

prejudicial.  (ECF 124 at 8).  Harrison, however, asserts that the notes should be admitted as they

were made contemporaneously with her discussions with Stacey Jenkins, and it is "more probable than not" that the notes accurately reflect the conversation.  (ECF 133 at 2).

But the professed accuracy of the notes is besides the point.  It is hard to see how these notes are not "written assertions," made by Harrison "while [she was not] testifying at the current trial or hearing."  Fed. R. Evid. 801.  Accordingly, to the extent the notes are offered into evidence for "truth of the matter asserted in the statement[s]," they are inadmissible hearsay.  Fed. R. Evid 801(c)(2).  Similarly, to the extent that Harrison hopes to offer the notes as a way of admitting Stacey Jenkin's alleged assertions as truth of that matter asserted, she would be offering hearsay within hearsay.  *See* Fed. R. Evid. 805; *see Stolarczyk ex rel. Estate of Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, 376 F. Supp. 2d 834, 839 (N.D. Ill. 2005) (finding the statements allegedly made by the declarant to an EEOC investigator, contained in the investigator's handwritten notes, inadmissible).

Perhaps, Harrison's emphasis on the fact that the notes were made contemporaneously with the interview is meant to suggest that the notes fall within the present sense impression exception to the hearsay rule, pursuant Federal Rule of Evidence 803(1).  *See United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001) ("Courts have agreed on three principal criteria for the admission of statements pursuant to this rule: (1) the statement must describe an event or condition without calculated narration; (2) the speaker must have personally perceived the event or condition described; and (3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter.").  That being said, Harrison still offers no evidence of when these notes were actually prepared.  *See Alexander v. CIT Tech. Fin. Servs., Inc.*, 217 F. Supp. 2d 867, 883 (N.D. Ill. 2002) ("Alexander has provided no evidence supporting her claim that these notes were written 'immediately thereafter' such that they could

constitute present sense impressions."). As such, until Harrison provides an appropriate hearsay exception, or explanation of how the notes are to be admitted for non-hearsay purposes, Defendants' motion *in limine* is GRANTED as to this evidence.

### E. Testimony of Keiona Harrison (No. 7)

Defendants next seek to prevent Harrison from testifying about a variety of topics she spoke about during her depositions on the grounds that such testimony would be speculative, highly prejudicial, not relevant, hearsay, and made without personal knowledge. (ECF 124 at 11-12). Harrison responds that she "does not object with a qualification -- and that is if she is asked a direct question by counsel and her response requires her to answer the question, then she should be able to answer the question." (ECF 133 at 2).

Here, at least seven of the topics Defendants cite involve the substance of what other people told Harrison outside of Court. (*See* ECF 124 ¶¶ 7.a, 7.c, 7.e, 7.g, 7.i, 7.k, 7.l). To the extent that Harrison is seeking to testify—or say—what she has heard from someone else outside of Court, this is the very definition of hearsay. Again, such statements may fall under an exception to hearsay, or may be offered for a reason other than the truth of the matter asserted. But until Harrison actually identifies an applicable hearsay exception or non-hearsay purpose, Defendants' motion *in limine* concerning this testimony will be GRANTED.

The remaining topics identified by Defendants include Harrison's belief that Eric Zimmerman supported her, her belief that her race contributed to her treatment and that she was racially profiled, her belief that state law required her to report her interaction with law enforcement to her supervisors, and her belief that Defendants had not provided her with all discovery materials. (*Id.* ¶¶ 7.b, 7.d, 7.f, 7.h, 7.j). To the extent that Harrison intends to testify how she personally felt, so long as it is based on what she rationally perceived and would assist

10

the jury in understanding her testimony, it is permissible opinion testimony.  Fed. R. Evid. 701.

Further, such testimony would be relevant to the issue of damages.  *See Hogue v. City of Fort

Wayne*, 599 F. Supp. 2d 1009, 1017 (N.D. Ind. 2009) ("Defendants' motion [to strike] will be

DENIED with respect to Hogue's statement that he 'felt upset' and 'embarrassed', as it is

relevant to the issue of damages.").

Similarly, Harrison can permissibly testify as to how her understanding of her legal

obligations informed her actions.  *See CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v.

Venrock Assocs.*, 411 B.R. 591, 603 (N.D. Ill. 2009) ("[T]he motion [*in limine*] is denied in that

Mr. Kopko can explain why he wrote and submitted the memo to the Board and testify as to his

understanding at the time regarding what Maryland and Delaware law provided, to the extent he

relied upon the understanding to inform his actions.").  The Court, however, fails to see the

relevance of bringing up any discovery disputes to the jury, especially considering Harrison

failed to file a motion to compel regarding these issues.  *See Chi. Imp., Inc. v. Am. States Ins*.

Co., No. 09 CV 2885, 2016 WL 4366494, at *9 (N.D. Ill. Aug. 16, 2016) ("Rehashing discovery

disputes in front of the jury would have been inefficient and confusing, especially when the

discovery disputes between the parties were of marginal relevance to the merits of this case.").

Still more, any testimony that she was racially profiled, without more, is inadmissible.  *See*

Federal Rule of Evidence 602; *see also Hogue*, 599 F. Supp. 2d, at 1017-18 ("Though Hogue's

assertions that he felt 'racially profiled' and that he thinks he was treated the way he was treated

because of his race may be relevant to his § 1985 conspiracy claim, these statements merely

reflect Hogue's speculation about Defendants' motive for its actions, and therefore are outside of

his personal knowledge.  Consequently, these statements will be stricken." (internal citation

omitted)).  Accordingly, Defendants' motion *in limine* is GRANTED in part and DENIED in part as to this evidence.

### F.  Testimony of Marcus Hendricks (No. 8)

Defendants next seek to bar Marcus Hendricks from testifying, consistent with his deposition testimony, that "[Harrison] kind of felt like it was, you know, unfair, because she didn't get charged with anything.  It was, she wasn't really in the wrong at all."  (ECF 124 at 12-13).  In support of their motion, Defendants argue that such testimony constitutes inadmissible hearsay, is not relevant, and contains legal conclusions.  (*Id.*).  Harrison objects, asserting without further explanation that "[i]f Mr. Hendricks is asked why [Harrison] 'felt' that the process was unfair, then he should be allowed to state his answer."  (ECF 133 at 3).

As already mentioned *supra*, while any witness may testify about what he or she observed, the witness cannot attach legal labels such as "excessive" or "unreasonable" to the Defendant Officers' actions.  Thus, Hendricks can testify as to what he rationally perceived and how he perceived a conversation, if it would assist the jury in understanding his testimony.  Fed. R. Evid. 701; *see United States v. Estrada,* 39 F.3d 772, 773 (7th Cir. 1994) (per curiam) (holding that a participant in a conversation may testify as to his understanding of the conversation to satisfy Rule 701(a)'s requirement that the testimony be rationally based on the witness's perceptions).  To the extent, though, that Hendricks will attempt to testify as to what Harrison told him regarding how she felt, such statements would likely be hearsay if offered to prove how, in fact, Harrison felt.  Further, to the extent that Hendricks is attempting to testify how Harrison felt about the May 13, 2017, investigatory stop and her treatment, or her thoughts on the matter, his testimony would likely be speculative and lack a proper foundation.  Accordingly, Defendants' motion *in limine* is GRANTED in this regard.

### G.  Testimony of Jordan Peterson (No. 9)

Defendants next seek to bar the testimony of Jordan Peterson that two of the Defendant Officers, "on another occasion, 'illegally pulled' [him] out of his car," and from stating his opinion that Defendant Hollo used excessive force against Harrison.  (ECF 124 at 13).  Harrison objects, asserting that neither she nor counsel can tell Peterson how to testify, and that Peterson should be allowed to testify about his observations.  (ECF 133 at 3).

Again, as already explained *supra*, labels such as "excessive" or "illegal" constitute impermissible legal conclusions.  Further, without any additional explanation, Peterson's testimony that two of the Defendant Officers illegally pulled him out of his car on another occasion seems to be offered for no other reason than to show those Defendants' propensity to act illegally or with excessive force again, and imply that they did so here.  As such, the testimony would be impermissible character evidence pursuant to Federal Rule of Evidence 404(b)(1).  *See Treecee*, 213 F.3d at 363-64.  Again though, Peterson, like every other witness, will be permitted to testify as to what he personally observed.  Accordingly, Defendants' motion *in limine* is GRANTED in this regard.

### H.  Testimony of Tyronte Wilms (No. 10)

Defendants raise similar arguments seeking to bar the testimony of Tyronte Wilms.  More specifically, Defendants seek to bar Wilms from testifying that he knows Defendants Hollo and Nicklow are "doing crazy stuff," that Defendant Hollo had shot somebody, and that Defendant Nicklow had "harassed" Wilms and others, on the grounds that it is not relevant and more prejudicial than probative.  (ECF 124 at 13).  Similarly, Defendants seek to exclude Wilms's deposition testimony that "He wasn't even supposed to pat down, I don't even know for him to pat down women.  I don't think even they was supposed to.  She wasn't in no crime.  She didn't

do nothing illegal," as inadmissible legal conclusions, not relevant, and more prejudicial than probative.  (*Id.* 13-14).  Finally, Defendants seek to bar Wilms from testifying that the Defendant Officers are "dirty cops" who will "kill you" on the grounds that such testimony is not relevant and more prejudicial than probative.  (*Id.* at 14).  Harrison again objects, asserting that neither she nor counsel can tell Wilms how to testify, and that he should be permitted to testify as to what he saw.  (ECF 133).

First, Wilms's assertions that the Defendant Officers were not supposed to pat down Harrison and that she was not doing anything illegal are impermissible legal conclusions.  *See Martin v. Fort Wayne Police Dep't*, No. 1:11-CV-350, 2014 WL 1319337, at *9 (N.D. Ind. Mar. 28, 2014).  Again, though, Wilms is of course permitted to testify as to what he saw and rationally perceived.

As to Wilms's statements regarding the Defendant Officers engaging in harassment, "crazy stuff" and being "dirty cops" who will "kill you," this testimony again appears to be impermissible character evidence.  Such evidence seems to be offered for no other reason to show that the Defendant Officers acted in accordance with their alleged bad character as "dirty cops."  Fed. R. Evid. 404(a)(1).  Similarly, evidence Defendant Hollo was involved in a shooting is inadmissible to show that he has a character for acting poorly and he acted in accordance with that character here.  Fed. R. Evid. 404(b)(1).  As such, Defendants' motion *in limine* is GRANTED in this regard as well.

### I.  Testimony of Miguel Rivera (No. 11)

Defendants next seek to exclude the suspected testimony of Miguel Rivera.  In particular, Defendants seek to bar Rivera from testifying about hearing from members of the Fort Wayne Police Department that Harrison had been "treated like trash" and strip searched; that he

14

apologized to Harrison for what happened; the he felt like the Gang Unit racially profiled Harrison; that he had heard from "bad guys" that the "Gang Unit is foul"; that "Bobby Hollo is a liar and a coward" and that Defendant Hollo had "lied to [him] about a shooting"; that the sergeant of the Gang Unit tells lies; that Stacey Jenkins has said that the Gang Unit racially profiled; and that the Gang Unit had treated Rivera differently because of his race.  (ECF 124 at 14-16).  Harrison contends that all of Rivera's testimony should be admissible as her conversation with Rivera is the basis of part of the Defendant Officers' defamation claims, and because Rivera's testimony shows that Harrison "was telling the substantial truth of what happened."  (ECF 133 at 3).

To the extent that Rivera will testify about what others told him—be it anonymous members of the Gang Unit, "bad guys," or Stacey Jenkins—his testimony is inadmissible hearsay.  Again, such evidence may be admissible under an exception to the rule against hearsay, or if offered for a non-hearsay purpose, but Harrison advances no such argument.  In fact, reasoning that Rivera's testimony will show Harrison's account to be substantially true seems to suggest that Harrison is specifically planning on offering the testimony to show the truth of the matter asserted.

Further, to the extent that Harrison is seeking to offer evidence of racial animus by way of Rivera's testimony, such evidence does not appear to be relevant to the claims at issue here. As Defendants have correctly noted, the Court has already dismissed Harrison's racial profiling claim at the summary judgment stage.  (*See* ECF 92).  Still at issue in the present case is whether any of the Defendant Officers engaged in excessive force, the reasonableness of the searches of Harrison's purse and person, and whether any Defendant Officers failed to intervene to prevent these alleged constitutional violations.  Such inquiries go to the reasonableness of the individual

Defendants' actions, and not any alleged wrongdoing of the Fort Wayne Police Department or its Gang Unit as a whole. Further, to the extent that Harrison hopes to use Rivera's testimony as evidence of Defendant Hollo's subjective intent during the alleged excessive force—*i.e.* to show that Defendant Hollo used excessive force because he was motivated by racial animus—such evidence is not relevant. "The only relevant inquiry is whether [Detective Hollo] used excessive force based on the perspective of the reasonable officer on the scene, knowing what [Detective Hollo] knew and hearing and observing what [Detective Hollo] did. . . . [T]he subjective intent of an officer making an arrest is not relevant to an excessive force claim." *Burton v. City of Zion,* 901 F.3d 772, 780 (7th Cir. 2018). Whether a pat-down search is reasonable is a similarly objective standard, evaluated under the totality of the circumstances. *See Brown*, 188 F.3d at 864 ("To justify a warrantless pat-down search without probable cause, the officer must also be able to point to specific articulable facts indicating that the individual may be armed and present of a risk of harm to the officers or to others."). Finally, to the extent that Rivera is seeking to testify as to any of the Defendant Officers' motives, such testimony would again be speculative. *See Hogue*, 599 F. Supp. 2d, at 1017-18.

Lastly, turning to Rivera's comments regarding the truthfulness of Defendant Hollo and the Gang Unit sergeant, "the jury, as finder of fact and weigher of credibility, is entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Goswami v. DePaul Univ.*, 8 F. Supp. 3d 1004, 1018 (N.D. Ill. 2014). While a witness cannot comment on the veracity of the *testimony* of another witness, *United States v. Nunez*, 532 F.3d 645, 652 (7th Cir. 2008), a party may introduce "testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character," Fed. R. Evid. 608(a). *See also United States v. Holt*, 486 F.3d 997, 1001 (7th Cir.

2007) ("Thus, in this case, Holt could have put forth witnesses who would testify either that in their personal opinions Officers Connolly and Corcoran are not truthful people, or that the officers have a reputation for untruthfulness.").  Thus, Rivera is permitted to comment on the character of truthfulness of other witnesses, but this opens the door for Defendants to admit evidence of the witness's truthful character in response.  Fed. R. Evid. 608(a).  Accordingly, Defendants' motion *in limine* is GRANTED in part, and DENIED in part, as to this evidence.

   *J.  Newspaper Articles or Other Civil Cases Listed in the Final Pretrial Order (No. 12)*

   Defendants first assert the news articles and other civil cases listed in the Final Pretrial Order should be excluded because Harrison failed to disclose them in a timely manner, in violation of Federal Rule of Civil Procedure 26(e).  (ECF 124 at 16).  As an initial matter, Harrison's failure to disclose the news articles and other civil cases earlier in this litigation is not necessarily dispositive.  "Judges have vast discretion in supervising discovery and in declining to impose discovery sanctions and exclude evidence." *Talbert v. City of Chi.*, 236 F.R.D. 415, 419 (ND. Ill. 2006).  Accordingly, the Court will turn to the substance of the parties' arguments.

   Defendants also contend that any new articles constitute inadmissible hearsay.  (*Id.*).  Still more, they argue that the evidence of the other civil cases is impermissible as evidence of other wrongs, and because it is unduly prejudicial.  (*Id.*).  Harrison, in response, contends that the articles and case citations should be allowed as relevant to the issue of damages.  More specifically, Harrison asserts that the accusations and assertions made in the other cases are an alternative basis for any harm that the Defendant Officers allegedly felt as a result of Harrison's alleged defamatory remarks.  (ECF 133 at 4).

   Based on their trial brief, the Defendant Officers appear to be asserting that they are entitled to compensatory damages other than the nominal damages presumed in defamation *per*

*se* cases.  (*See, e.g.,* ECF 130 at 10 ("Detective Hawthorne avoids public places on the southeast side of town because he is approached and sometimes harassed about this current lawsuit and the false statements that Keiona Harrison has made.")); *see also Hrezo v. City of Lawrenceburg*, 81 N.E.3d 1146, 1156 (Ind. Ct. App. 2017).  While nominal damages are presumed, the Defendant Officers must show they are, "upon proper proof . . . entitled to special damages, *i.e.*, damages, generally pecuniary in nature, which are consequential to the defamation."  *Rambo v. Cohen*, 587 N.E.2d 140, 145-46 (Ind. Ct. App. 1992), *abrogated on other grounds by Williams v. Tharp*, 889 N.E.2d 870, 879 n.6 (Ind. Ct. App. 2008).  In other words, "special damages are not assumed to be necessary or inevitable but must be shown by allegation and specific proof to have been actually incurred as a natural and proximate consequence of the wrongful act."  *Levee v. Beeching*, 729 N.E.2d 215, 223 (Ind. Ct. App. 2000).  Ultimately, "it [is] for a jury to decide proximate cause."  *Id.* at 224.

Because the damages caused by Harrison's allegedly defamatory statement are at issue, and because the existence of other potential causes to the harms suffered by the Defendant Officers is in question, the Court finds that these news articles and other civil cases are relevant for a limited purpose.  Fed. R. Evid. 401.  As Harrison seems to be offering the articles and other civil cases not as proof that the allegations in those articles or cases happened, but as a possible alternative cause of the Defendant Officers' alleged injury, it seems they are being offered for a non-hearsay purpose.  Harrison will, of course, still be required to lay the proper foundation before admitting any copy of these articles or cases into evidence for this limited purpose.  *See generally United States v. Barker*, 27 F.3d 1287, 1292 (7th Cir. 1994).  Accordingly, Defendants' motion *in limine* is DENIED in regard to this line of evidence.

### K.  Internal Affairs Determination Letter to Officer Hollo (No. 14).

Defendants next seek to bar Harrison from introducing an internal affairs determination letter issued to Defendant Hollo on the grounds that it is not relevant.  (ECF 124 at 17-18).  Harrison, in response, claims that the letter should be admitted as proof that her allegations, which are the basis of the Defendant Officers' defamation counter-claims, were substantially truthful.

At least as to Harrison's § 1983 claims, the letter is clearly not relevant.  *See Hill v. City of Chi.*, No. 06 C 6772, 2011 WL 3205304, at *3 (N.D. Ill. July 28, 2011) ("It is well-settled that violations of the Chicago Police Department Rules and Regulations cannot establish proof that a defendant violated a plaintiff's constitutional rights." (citing *Thompson v. City of Ch.*, 472 F.3d 444, 454–55 (7th Cir. 2006))).  While it is a closer call as to whether the letter is relevant to the defamation and invasion of privacy by false-light publicity counter-claims, the Court need not address relevance as Harrison again has failed to advance any argument regarding hearsay.  The letter would clearly contain written assertions made out of court, and, based on her response, Harrison seemingly intends to introduce the letter as proof that the assertions contained therein— which presumably are similar to her own—are true.  Accordingly, because the letter is inadmissible hearsay and not relevant to Harrison's § 1983 claims, Defendants' motion *in limine* is GRANTED.

### L.  The Allen County Employee Handbook/Guidelines (No. 15)

Defendants also seek to prevent Harrison from introducing the Allen County Employee handbook on relevancy grounds.  (ECF 124 at 18).  In her response, Harrison asserts that the handbook is relevant to the issue of qualified privilege—*i.e*. whether Harrison had a duty to report the May 13, 2017, incident to her employer.  (ECF 133 at 5).  In their reply, Defendants

seem to maintain that the handbook language is inapplicable because, by its text, it only requires employees to report arrests for any criminal offense—whereas Harrison was only temporarily detained.  (ECF 136 at 10-11).

As the Court noted in its Opinion and Order on the parties' cross-motions for summary judgment, the defense of qualified privilege protects communications in which the speaker has a "duty either public or private, either legal, moral, or social" but it may still be lost if "the speaker was primarily motivated by feelings of ill will."  (ECF 92 at 42 (citing *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172, 1176 (Ind. Ct. App. 1983))).  "The existence of a qualified privilege does not change the actionable nature of the words spoken.  Rather, the privilege rebuts the element of malice implied by law for the making of a defamatory statement."  *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1232 (Ind. Ct. App. 2005) (citation and internal quotation marks omitted).  Here, the Court agrees with Harrison that the text of the employee handbook—and her understanding of what the words required—would be relevant to whether her statements were motivated by "actual malice" or "ill-will."  Accordingly, Defendants' motion *in limine* is DENIED in this regard.

*M.  Information That Was Not Timely Disclosed Under Federal Rule of Civil Procedure 26(e)*

Defendants seek to exclude any information that Harrison failed to provide to them pursuant to Rule 26(e), yet the Defendants point to no particular piece of evidence which they believe Harrison will attempt to admit despite noncompliance with Rule 26, other than the news articles and other civil cases discussed *supra*.  (ECF 124 at 18).  Consequently, Defendants' motion with respect to this evidence will be DENIED at this time.  However, Defendants may renew their objection during trial if the issue arises, thus allowing the Court to review the admissibility of specific items.

## V.  DEFENDANTS' SUPPLEMENTAL MOTION *IN LIMINE*

Defendants filed a supplemental motion *in limine* in response to Harrison's statement of the case (ECF 129) seeking to bar:

> Testimony and arguments that the counterclaims are "sham" counterclaims; that the counterclaims were only asserted in retaliation for plaintiff attempting to vindicate her civil rights through the filing of a lawsuit; references to the First Amendment; and that the officers should be prohibited from suing litigants who accuse officers of civil rights violations.

(ECF 131).  In support of their motion, Defendants assert that such testimony and arguments are not relevant to the parties' claims, have little probative value, and would be highly prejudicial. (ECF 132 at 2).  In response, Harrison primarily argues that she has a First Amendment right to bring a § 1983 claim for retaliation.  (ECF 138 at 2).

While Harrison may indeed have the right to assert a retaliation claim, the fact of the matter is, she currently is not.  Harrison had in fact sought the Court's leave to supplemental her complaint to include a First Amendment retaliation claim.  (ECF 51, 51-1).  Magistrate Judge Paul Cherry, however, dismissed Harrison's motion for leave without prejudice on grounds of futility.  (ECF 54).  Harrison never tried again to amend or supplement her complaint.  The one case cited by Harrison in support of her contention, *DeMartini v. Town of Gulf Stream*, is inapplicable as the plaintiff's amended complaint in that case contained "a First Amendment retaliation claim under § 1983 against the town."  942 F.3d 1277, 1287 (11th Cir. 2019).  Here, the motivation of the Defendant Officers' counter-claims does not appear to be relevant to any element of the parties' current claims.  *See Tallman v. Freedman Anselmo Lindberg, L.L.C.*, No. 11-3201, 2013 WL 2631754, at *3 (C.D. Ill. June 12, 2013) ("The Court finds that Plaintiff's motive in bringing the lawsuit is not relevant on the issue of whether Defendant violated the [Fair Debt Collection Act].").

Harrison argues that she should be allowed to argue that the Defendant Officers' counter-claims are shams as a "matter of policy, argument, and conscience of the community." (ECF 138 at 2). Jurors, however, are not the arbiters of what the law is or what the law should be. Rather, they are to "decide the facts from the evidence in this case" and apply the law that the Court gives them. Federal Civil Jury Instructions of the Seventh Circuit § 7.09 (2017). Therefore, any argument that the jury should decide the case based on factors beside the evidence presented or the law provided by the Court is improper. As such, Defendants' supplemental motion *in limine* (ECF 131) is GRANTED).

## VI. CONCLUSION

For the foregoing reasons, Harrison's Motion *in limine* (ECF 120) is GRANTED IN PART and DENIED IN PART, the Defendants' Motion *in limine* (ECF 123) is also GRANTED IN PART and DENIED IN PART, and the Defendant' Supplemental Motion *in limine* (ECF 131) is GRANTED.

It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury. Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Entered this 8th day of October 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge